UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WORLDWIDE MEDIA, INC., et al., | Case No.17-cv-07335-VKD |
| Plaintiffs, | **ORDER GRANTING TWITTER'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| TWITTER, INC., et al. | Re: Dkt. No. 31 |
| Defendant. | |

Plaintiffs Worldwide Media, Inc. ("Worldwide Media") and Michael Berkens filed this suit against defendants Twitter, Inc. ("Twitter") and Does 1-10 ("the Doe defendants") on December 27, 2017. Dkt. No. 1. Twitter filed a motion to dismiss the original complaint on May 14, 2018. Dkt. No. 24. Plaintiffs did not oppose that motion; instead, they filed a First Amended Complaint ("FAC") as of right on May 29, 2018, mooting Twitter's motion. Fed. R. Civ. P. 15(a)(1)(B).

The First Amended Complaint asserts the following claims: (1) trademark infringement, (2) contributory trademark infringement, (3) violation of the Computer Fraud and Abuse Act ("CFAA") under 18 U.S.C. § 1030, (4) breach of contract, (5) negligence and recklessness, (6) tortious interference with contract, (7) breach of duty of bailment, (8) conversion, (9) unfair competition under California Business and Professions Code § 17200 et seq., and (10) declaratory judgment. This Court has jurisdiction over these claims based on federal question jurisdiction under Section 39 of the Lanham Act (15 U.S.C. § 1121), the CFAA under 18 U.S.C. § 1030, and the Declaratory Judgment Act under 28 U.S.C. § 2201; diversity jurisdiction under 28 U.S.C. § 1332; and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

As explained below, only some of plaintiffs' claims are asserted against Twitter. Twitter moves to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 31. The Court heard

United States District Court
Northern District of California

oral argument on the motion on July 24, 2018.  Dkt. No. 34.

Plaintiffs and Twitter have consented to magistrate judge jurisdiction.   Dkt. Nos. 15, 16.  Plaintiffs voluntarily dismissed the Doe defendants.[1]  Dkt. No. 40.  Accordingly, this Court grants Twitter's motion to dismiss, with leave to amend afforded as to the particular claims identified below.

## I.    BACKGROUND[2]

Plaintiffs own and operate the @TheDomains Twitter account and a related blog (http://www.thedomains.com) about the domain name industry.  Dkt. No. 25 ¶ 10.  Plaintiffs generate advertising revenue from the blog, and generate traffic, advertising, and associated revenue from their Twitter account, which they use to promote the blog.  *Id.* ¶¶ 10-11.  Plaintiffs also do business with third parties through Twitter's direct messaging feature, and these communications contain confidential and proprietary information of plaintiffs and third parties.  *Id.* ¶ 11.  Through their blog and Twitter account, plaintiffs have developed and maintained the THEDOMAINS mark, for which they claim common law trademark protection.  *Id.* ¶ 13.

On December 22, 2017, the Doe defendants hacked plaintiffs' Twitter account.  *Id.* ¶ 16.  Plaintiffs do not know who the Doe defendants are or how they obtained access to the account.  *Id.*  Shortly after the hack, the Does changed the email address associated with the Twitter account, effectively locking plaintiffs out.  *Id.* ¶ 17.  Plaintiffs submitted multiple complaints to Twitter on December 23, 2017, December 24, 2017, and December 27, 2017.  *Id.* ¶ 18.  However, Twitter informed plaintiffs that it was unable to investigate their complaints because the email address used to submit the complaints did not match the email address associated with account (now the Does' chosen address).  *Id.* ¶ 19.  Plaintiffs had not protected access to their account using Twitter's two-factor authentication feature because they say Twitter failed to make them aware

---

[1] Although the Does are no longer defendants in this action, the Court refers to them as the "Doe defendants" in this order for ease of reference and for consistency with the allegations of the FAC.

[2] Unless otherwise noted, the following factual allegations are taken from the FAC, and they are accepted as true for purposes of the motion to dismiss.  *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

United States District Court
Northern District of California

that this additional security feature was available. *Id.* ¶ 27. Several third parties independently attempted to inform Twitter that plaintiffs' account had been hacked, but did not succeed in getting Twitter to take action. *Id.* ¶¶ 20, 28.

After gaining control of the account, the Doe defendants used plaintiffs' credit card without permission to purchase 93,000 promoted tweets. They also posted fake tweets from the account, such as "This Twitter Account For Sell [sic]" and "You want Get Free iPhone X." *Id.* ¶ 21. Plaintiffs say they asked Twitter to refund the unauthorized credit card charges, but that Twitter's online credit card refund process "does not work" because "the web pages are broken." *Id.* Plaintiffs do not allege whether they attempted to obtain a refund through other means.

Plaintiffs filed this action on December 27, 2017. Dkt. No. 1. Twitter restored plaintiffs' access to and control over the Twitter account on December 30, 2017. Dkt. No. 25 ¶ 24.

## II.   **LEGAL STANDARD**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   **DISCUSSION**

Twitter moves to dismiss all claims asserted against it. At the July 17, 2018 hearing, plaintiffs clarified that they assert the following five claims against Twitter: (1) claim 3: contributory trademark infringement, (2) claim 5: breach of contract, (3) claim 6: negligence and recklessness, (4) claim 8: breach of duty of bailment, and (6) claim 10: unfair competition. *Id.* at 10:24–11:4. Plaintiffs previously asserted the following claims against the Doe defendants: (1)

United States District Court
Northern District of California

claim 2: direct trademark infringement, (2) claim 4: CFAA violation, (3) claim 7: tortious interference with contract, (4) claim 9: conversion, and (5) claim 10: unfair competition.  Dkt. No. 37 at 10:3-13.  Because plaintiffs have dismissed their claims against the Doe defendants, the Court addresses the remaining claims asserted against Twitter.

### A.    Claim 3: Contributory Trademark Infringement

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).  When the defendant supplies a service rather than a product, under the second prong of this test, "the plaintiff must allege facts showing that the defendant had direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (internal quotations and alterations omitted).[3]

Plaintiffs do not assert contributory infringement based on "intentional inducement" by Twitter; instead, they rely on Twitter's alleged control of the instrumentality used to infringe the trademark.  Plaintiffs argue that Twitter continued to supply use of the account to the Doe defendants for a week despite being notified repeatedly that the account was stolen, thus permitting the Doe defendants to send direct messages, publish public tweets, and purchase 93,000 promoted tweets with plaintiffs' credit card.  Dkt. No. 32 at 12–13.

### 1.    Actual or constructive knowledge

Plaintiffs argue that Twitter possessed actual or constructive knowledge that the Doe defendants were infringing plaintiffs' mark by controlling the Twitter account because plaintiffs and other third parties notified Twitter that the Doe defendants had taken over the account.  However, the FAC only pleads that plaintiffs complained to Twitter about the *hacking*, but not

---

[3] For the purposes of this motion, the Court assumes but does not find that plaintiffs have adequately pled facts supporting direct trademark infringement by the Doe defendants.

4

about any trademark infringement. Dkt. No. 25 ¶¶ 18-20. In their opposition, plaintiffs appear to acknowledge that they did not complain to Twitter about trademark infringement. *See* Dkt. No. 32 at 10 ("Plaintiffs cannot have been required to immediately know the law around contributory trademark infringement, and thus specifically claim 'trademark infringement' in their notices."). Thus, on the face of the complaint, Twitter's actual knowledge of trademark infringement is neither pled, nor could it plausibly be inferred.[4]

With respect to constructive knowledge, plaintiffs contend that *any* hacked Twitter account necessarily implicates trademark infringement. Dkt. No. 32 at 10. They also argue that because Twitter had dealt with stolen accounts in the past, it "knew or should have known that trademark infringement must be occurring as an inevitable result of account theft," because a thief's tweets from a stolen account would confuse that account's audience, and thus infringing the account holder's mark. *Id.* at 10–11. Plaintiffs assert that many, if not most, Twitter account names are also trademarks, especially for those accounts used by businesses, and that (knowing this) Twitter previously has given prompt attention to accounts associated with "higher profile" names that have also been hacked. *Id.* ¶¶ 31, 52; *see also* Dkt. No. 37 at 13:21–14:9.

Twitter observes that not all Twitter account names are also trademarks, and that not all hacking necessarily results in trademark infringement. Dkt. No. 33 at 4. It contends that notice of hacking, without more, is not enough to support a plausible claim that Twitter had constructive knowledge of trademark infringement by the Doe defendants.

The Court agrees that the allegations in the FAC do not state a claim that Twitter had constructive knowledge of the trademark infringement. At most, plaintiffs' allegations suggest that Twitter has general knowledge that hacking may result in trademark infringement—not that

---

[4] In their opposition, plaintiffs state that "because it is so early in the proceeding and discovery has not yet occurred, Plaintiffs are not in a position to provide further facts relevant to whether Twitter had actual knowledge of the infringement." Dkt. No. 32 at 12. Plaintiffs request leave to conduct discovery regarding Twitter's actual knowledge of the trademark infringement, citing *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal. 2008). That case concerns a motion for summary judgment that occurred after regularly scheduled discovery. It does not support plaintiffs' contention that they ought to be allowed to take early discovery in order to find factual support for a claim that should have complied in the first instance with Rule 11. Fed. R. Civ. P. 11(b).

United States District Court
Northern District of California

this particular hacking incident caused infringement of plaintiffs' trademark rights. Without more, allegations that Twitter had general knowledge or reasons to believe that some hacking could result in trademark infringement are not enough to support a claim for contributory infringement. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010); *Spy Phone Labs LLC v. Google Inc.* (*Spy Phone I*), No. 15-cv-03756-PSG, 2016 WL 1089267 (N.D. Cal. Mar. 21, 2016).

### 2.    Aiding and abetting; Willful blindness

Alternatively, plaintiffs argue that Twitter "aided and abetted" the Doe defendants in their trademark infringement, or that Twitter was willfully blind to the infringement.

It is not clear how plaintiffs' "aiding and abetting" infringement theory differs from their theory of contributory infringement based on Twitter's alleged constructive knowledge. In any event, plaintiffs fail to articulate a unique theory of "aid and abetting" infringement, or any different or additional facts in support of such a theory. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1240 (10th Cir. 2013) ("Akin to aiding and abetting, contributory infringement generally consists of either intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party."); *Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992) ("The parties have not cited, nor has our research disclosed, any case imposing aiding and abetting liability under the Lanham Act.").

Plaintiffs' "willful blindness" infringement theory requires allegations that plausibly show Twitter knew or had reason know of infringement, but did nothing to stop or prevent it. *See, e.g.*, *Fonovisa Inc. v. Chery Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996) (adopting Seventh Circuit's holding in *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.3d 1143 (7th Cir. 1982), and noting that "the courts nevertheless recognize that a company is responsible for the torts of those it permits on its premises knowing or having reason to know that the other is acting or will act tortiously . . . .") (internal quotations omitted); *Spy Phone Labs LLC v. Google Inc.* (*Spy Phone II*), No. 15-cv-03756-PSG, 2016 WL 6025469, at *6 (N.D. Cal. Oct. 14, 2016) (applying Second Circuit's analysis from *Tiffany*, 600 F.3d at 109 for contributory trademark infringement through willful blindness). Plaintiffs' contention that Twitter knew or had reason to know of the Doe defendants' infringement, and was therefore willfully blind, is based on the same allegations

6

of general knowledge that some hacking results in trademark infringement that plaintiffs cite in support of their constructive knowledge theory. These allegations are insufficient for the reasons discussed above. In their opposition, plaintiffs do not suggest that they could plead additional facts that would support a willful blindness theory.

The Court therefore dismisses the contributory trademark infringement claim with leave to amend to permit plaintiffs to plead specific facts in support of a claim that Twitter possessed constructive knowledge that the Doe defendants infringed plaintiffs' common law trademark rights. To the extent plaintiffs attempt to state a claim based on Twitter's actual knowledge of alleged trademark infringement, aiding and abetting infringement, or willful blindness to infringement, the Court dismisses such claims without leave to amend.

### B. Claim 5: Breach of Contract

To state a claim for breach of contract, plaintiffs must show (1) the existence of a contract with Twitter, (2) plaintiffs' performance or excuse for nonperformance, (3) Twitter's breach, and (4) resulting damages to plaintiffs. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).[5]

#### 1. Breach of express contract

Plaintiffs assert that Twitter's written Terms of Service ("the TOS") is an express contract between them, and that Twitter breached that contract. A claim for breach of contract "must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011). The FAC does not identify any specific TOS provisions that Twitter has breached, and fails to state a claim for breach of contract on this basis alone.

In its opposition to Twitter's motion, plaintiffs identify for the first time three provisions of

---

[5] California law applies to plaintiffs' breach of contract claims because "a federal court exercising jurisdiction over non-federal claims must usually apply the substantive law of the state in which it sits." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 n.6 (9th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938)). Twitter's Terms of Service states that California state law governs the Terms of Service and any dispute arising between a user and Twitter. Dkt. No. 31-2 at 16.

the TOS they say Twitter breached.[6]  These are: (1) "You retain your rights to all Content you submit, display on or through the Service.  What's yours is yours – you own your Content."; (2) "Twitter gives you a . . . license to use the software provided to you as part of the Service."; and (3) "You can control most of the communications from the Services."  Dkt. No. 32 at 14–15. Plaintiffs argue that Twitter breached these provisions by allowing the Doe defendants to access and control plaintiffs' content and communications, while denying access and control to plaintiffs. *Id.*

Twitter contends that granting plaintiffs leave to amend their breach of contract claim would be futile, because the identified provisions are merely general statements of policy that do not impose any legal obligations on Twitter, and because the TOS specifically disclaims any such obligations.

The first TOS provision appears in Section "3. Content on the Services."  Dkt. No. 31-2 at 3.  It states: "You retain your rights to all Content you submit, display on or through the Service. What's yours is yours – you own your Content."  *Id.* at 4.  This provision is Twitter's disavowal of an ownership interest in its subscribers' content.  No plausible reading of this provision supports plaintiffs' thesis that Twitter promises a subscriber that he or she will never lose access to an account or control of the content posted to it.  *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D. Cal. 2012) ("A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous."); *see also Wells v. Turner Entm't Co.*, 503 F.3d 728, 735 (9th Cir. 2007) (holding that contract interpretation is a question of law for the Court to decide,

---

[6] Although the TOS is not attached as an exhibit to the complaint, the Court may consider it on this motion to dismiss under the "incorporation by reference" doctrine, which permits the Court "to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotations omitted).  The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  *Id.*  Because the FAC refers to the TOS, Twitter has attached the TOS to its motion to dismiss, neither plaintiffs nor Twitter disputed the authenticity of the TOS, and the TOS is central to plaintiffs' breach of contract claim, the Court finds it appropriate to consider the TOS in determining whether to dismiss the FAC.

unless the interpretation depends on the credibility of extrinsic evidence, in which case the issue must be left to the trier of fact).

The second TOS provision appears in Section "4. Using the Services." *Id.* at 5. It states in relevant part: "Twitter gives you a . . . license to use the software provided to you as part of the Service." *Id.* at 7. This is a limited purpose software license from Twitter to its subscribers. No plausible reading of this provision supports plaintiffs' claim that Twitter must provide subscribers uninterrupted access to and control of their accounts at all times. *Ellsworth*, 908 F. Supp. 2d at 1084; *Wells*, 503 F.3d at 735.

The third TOS provision also appears in Section "4. Using the Services." *Id.* at 5. It states in relevant part: "You can control most of the communications from the Services." *Id.* at 7. Read in context, it is clear that this provision concerns communications between the subscriber and Twitter, not between the subscriber and third parties:

> You can control most communications from the Services. We may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Services and your account, and you may not be able to opt-out from receiving them. If you added your phone number to your account and you later change or deactivate that phone number, you must update your account information to help prevent us from communicating with anyone who acquires your old number.

*Id.* Standing alone, this provision cannot be read plausibly as a promise by Twitter to provide subscribers with uninterrupted access to and control of their communications, with Twitter or with others, at all times. *See, e.g.*, *Block v. eBay, Inc.*, No. C 11-06718 CRB, 2012 WL 1601471, at *2–4 (N.D. Cal. May 7, 2012) (finding that eBay's User Agreement did not provide a basis for eBay's liability because it bound only users, not eBay, and the provisions at issue did not create enforceable promises against eBay); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1199–1201 (N.D. Cal. 2009) (dismissing contract claim because agreements at issue did not contain any promises by Google).

## 2. Breach of implied contract

Claim 5 also alleges the existence of an "implied obligation to maintain adequate security protocols, detect blatant account hacks, and promptly and reasonably investigate and respond to

security complaints about hacked accounts." Dkt. No. 25 ¶ 64. According to plaintiffs, these implied obligations arise from the provisions in the TOS that "acknowledge[] that users' content stored and disseminated by Twitter is owned by the users," "license[] rights to such content from its users," grant Twitter "the right to place advertising in connection with user content," and place the responsibility for safeguarding the account on the user to "use a strong password and limit its use to this account." *Compare id.* ¶¶ 63-64 *with* Dkt. No. 31-2 at 3, 6, 12.

"An implied contract consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words. In order to plead a cause of action for implied contract, the facts from which the promise is implied must be alleged." *Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.*, 111 Cal. App. 4th 1127, 1134 (2004) (internal quotations omitted). Twitter argues that plaintiffs have failed to properly identify any facts from which an implied promise could have arisen, the terms of any such implied promise, or how Twitter breached that implied promise. Dkt. No. 31 at 9–10. In addition, Twitter argues, no implied promise can vary the terms of the parties' express agreement in the TOS.

Plaintiffs do not state any facts that give rise to the implied promise they claim, but rely solely on the *express* terms of the TOS. Essentially, plaintiffs allege that because they complied with the express terms of their obligations under the TOS, their compliance requires Twitter to comply with the *implied* obligations they recite in claim 5. Dkt. No. 25 ¶ 64. An implied contract is one that is not expressed in words, but rather implied from the *promisor's* conduct. *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269, 274 (9th Cir. 1965) (emphasis added) (citing Cal. Civ. Code § 1621). Plaintiffs' own, unilateral conduct cannot create an implied obligation on Twitter's part. Plaintiffs do not allege any conduct by Twitter that gives rise to the alleged implied contract.[7]

### 3. Breach of implied covenant of good faith and fair dealing

Claim 5 also alleges that Twitter breached an implied covenant of good faith and fair dealing because Twitter "deprived Plaintiffs of all benefits of the contract for a week,"

---

[7] *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312 (S.D.N.Y. 2010), does not support plaintiffs' position. That case concerned claims for breach of express contract and negligence— not breach of implied contract. *Id.*; *Baidu, Inc. v. Register.com, Inc.*, No. 1:10-cv-00444-DC, Dkt. No. 10, ¶¶ 35-38 (S.D.N.Y. Feb. 11, 2010).

"maintained an account security system that was far too easy to hack," "failed to notify users either of the insecure system or of the [two-factor authentication] feature," and "continu[ed] to charge Plaintiffs' credit card" without ensuring that plaintiffs received any benefit of the parties' bargain. Dkt. No. 32 at 16–17.

Every contract contains an implied-in-law covenant of good faith and fair dealing. *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 965 (N.D. Cal. 2015) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–84 (1988)). "Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (1990) (citations, quotations, and alterations omitted). "The precise nature and extent of the duty imposed will depend on the contractual purposes." *Id.* (citation, quotation marks, and alterations omitted). In addition, actions for breach of the implied covenant are generally limited to contract damages. *Foley*, 47 Cal.3d at 683–84 (holding that compensation for breach of the covenant of good faith and fair dealing, in all contexts outside of insurance contracts, "has almost always been limited to contract rather than tort remedies").

Twitter argues that plaintiffs' claim for breach of the implied covenant of good faith should be dismissed as superfluous for not stating a claim beyond breach of the TOS. *Careau*, 222 Cal. App. 3d at 1395 ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."). According to Twitter, "a party cannot breach the implied covenant by engaging in acts or conduct consistent with the express provisions of a contract." *Stewart*, 81 F. Supp. 3d at 965. The implied covenant of good faith "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of the agreement." *Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317, 349–50 (2000).

The Court agrees that, as currently pled, plaintiffs' allegations of breach of the implied

11

covenant of good faith and fair dealing are coextensive with their allegations of breach of express contract. *Compare* Dkt. No. 25 ¶ 65 ("Twitter has breached the Terms of Service and its implied obligations by reckless and grossly negligently failing to allow Plaintiffs continued access and control of their owned content, by allowing an unauthorized third party to access and control such content and the entire Account, by continuing to monetize such content for Twitter's won benefit even after the Account was hacked, and by failing to promptly and reasonably investigate and respond to the many complaints from Plaintiffs and Plaintiffs' readers about the hacked Account.") *with* Dkt. No. 25 at ¶¶ 66 ("Twitter's [TOS] provide that Twitter may be liable for direct damages . . . . Plaintiffs experienced direct damages as the result of all Twitter's aforesaid conduct . . . and also made advertising expenditures . . ., and thus is entitled to record that amount, at minimum. Twitter has a duty of good faith in its [TOS], and violated that duty in this case.")

In their opposition, plaintiffs argue that Twitter deprived them of all benefits of the TOS for a week by "maintain[ing] an account security system that was far too easy to hack," "fail[ing] to notify users either of the insecure eyes or of the enhanced [two-factor authentication] feature," and "requir[ing] users to have access to the email account associated with the account, which Twitter knows in most cases will be changed immediately upon theft." Dkt. No. 32 at 16. Plaintiffs contend that Twitter enjoyed the full benefit of its bargain (e.g., charging plaintiffs' credit card) but failed to ensure that plaintiffs received the full benefit of its bargain. Specifically, plaintiffs point to Twitter's refusal to suspend the account pending investigation and its failure to restore plaintiffs' access to their account until after this action was filed. *Id.* at 17. However, these allegations are virtually identical to plaintiffs' claim for breach of implied contract. *Cf.* Dkt. No. 25 ¶ 64 ("Twitter otherwise had an "implied obligation to maintain adequate security protocols, detect blatant account hacks, and promptly and reasonably investigate and respond to security complaints about hacked accounts."). Plaintiffs do not suggest there are any different facts that would support a claim for breach of the implied covenant of good faith and fair dealing.

### 4. Void contract

Claim 5 contains no allegations that plaintiffs' contract with Twitter is "void." Plaintiffs raise this argument for the first time in opposition to Twitter's motion to dismiss. Dkt. No. 32 at

12

17. The Court will not address a new contract-related claim that does not appear in the FAC.

The Court dismisses plaintiffs' claim for breach of contract. Plaintiffs have not identified any provisions in the TOS that plausibly support a claim for breach of contract or any implied obligations that arise from the TOS or the parties' conduct. However, the Court cannot say at this stage that it would be futile to permit plaintiffs to amend their breach of contract claim to plead specific provisions in the TOS that Twitter has breached, and/or to plead specific facts giving rise to implied obligations that Twitter has breached. Because plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is duplicative of their claim for breach of express terms, and because it appears there are no additional facts that plaintiffs could otherwise plead to support such a claim, the Court dismisses the claim for breach of the covenant of good faith and fair dealing without leave to amend. With respect to plaintiffs' new claim that their contract with Twitter is void, plaintiffs will be required to seek leave of Court to add such a claim, absent consent by Twitter to such amendment.

### C.    Claim 6: Negligence and Recklessness

To state a claim for negligence, plaintiffs must plead (1) a duty owed by Twitter, (2) a breach of that duty, (3) causation, and (4) damages. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). A claim of gross negligence requires, in addition to the traditional elements of negligence, allegations of "conduct by the defendant involving either want of even scant care or an extreme departure from the ordinary standard of conduct." *Chavez v. 24 Hour Fitness USA, Inc.*, 238 Cal. App. 4th 632, 640 (2015) (internal quotations omitted). The FAC appears to assert both negligence and gross negligence; the claim is styled "Negligence & Recklessness," and plaintiffs allege that "Twitter was negligent, grossly negligent and/or reckless . . . ." Dkt. No. 25 at 13:15, ¶ 70.

#### 1.    Duty of care

Plaintiffs contend that California Civil Code § 1714 imposes on Twitter a general duty to avoid injury to others. Dkt. No. 37 at 19:24–20:13. Plaintiffs do not cite Section 1714 in the FAC or their briefing on the motion to dismiss. They raised this statute for the first time at oral argument.

13

Section 1714 primarily concerns providing alcoholic beverages to minors, but subsection (a) states in relevant part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." Cal. Civ. Code § 1714(a) (emphasis added). At the hearing, plaintiffs conceded that Section 1714 concerns only ordinary negligence, which they acknowledge is the TOS expressly disclaims.[8] Dkt. No. 37 at 20:8-10. Any duty that Twitter may have owed plaintiffs, therefore, does not arise from Section 1714.

Citing *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312 (S.D.N.Y. 2010), plaintiffs contend that Twitter's alleged duty to avoid injuring them arises from the fact that Twitter enacted security protocols of some kind. Dkt. No. 32 at 18–19. In *Baidu*, the plaintiff pled specific factual allegations in support of a claim of gross negligence based on the defendant's failure to comply with its own security requirements. These failures included: processing an intruder's request to change an authorized email address despite receiving an incorrect response to the security question; not checking the intruder's bogus security code against the correct code; failing to question the legitimacy of the intruder's new email address; and providing the intruder with the plaintiff's user name. *Baidu*, 760 F. Supp. 2d at 319. In that case, the parties' contract stated that the plaintiff would be "responsible for maintaining the security of [its] account" and that plaintiff waived all claims for *ordinary* negligence. The *Baidu* court held that the plaintiff had not waived claims for *gross* negligence or recklessness because the defendant "did undertake to provide web site security and established protocols to do so." *Id.* at 319–20.

Unlike the plaintiff in *Baidu*, plaintiffs here plead no facts describing any security protocols that Twitter failed to follow. The FAC includes only conclusory allegations of negligence with respect to unspecified security measures. Dkt. No. 25 ¶ 70 (alleging that "Twitter was negligent, grossly negligent and/or reckless in . . . failing to implement adequate security

---

[8] While a contract releasing liability for ordinary negligence may be deemed invalid if it involves and impairs the public interest, *see Tunkl v. Regents of Univ. of Calif.*, 60 Cal. 2d 92 (1963), plaintiffs do not contend that the disclaimer in the TOS impairs any public interest.

measures and perhaps even Twitter's own meager security measures . . . .").  Plaintiffs also allege that "Twitter's security features and practices are below industry standards," but they do not identify the industry standards or describe what they require.  *Id.* ¶ 26.  Plaintiffs have failed to plead facts showing the existence of any duty owed by Twitter that could support a claim for ordinary negligence or gross negligence.

### 2.   Economic loss doctrine

Twitter asserts that plaintiffs' negligence claim is barred under the economic loss doctrine, which "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C 13-1803-EMC, 2013 WL 4530470, at *3 (N.D. Cal. Aug. 26, 2013) (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).  The FAC claims only economic harm: "lost revenue and out-of-pocket expenses and damage to Plaintiffs' commercial reputation and the value of its business."  Dkt. No. 25 ¶ 71. Plaintiffs argue that Mr. Berkens suffered damage to his personal and professional reputation and that Worldwide Media suffered damage to its goodwill.  Dkt. No. 32 at 18.  However, damages to a business's goodwill and reputation are commercial losses encompassed by the economic loss doctrine.  *Z Best Body & Paint Shops, Inc. v. Sherwin-Williams Co.*, No. CV 16-02398-SVW-KK, 2017 WL 3081692, at *2 (C.D. Cal. June 7, 2017) ("Plaintiff's allegations of loss of goodwill and reputation sound in contract because the alleged reputational damage is to a business and not an individual."); *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *5 (N.D. Cal. Sept. 14, 2016) ("Economic losses include damages for . . . loss of goodwill . . . .").  For this reason, even if Worldwide Media could otherwise state a claim for negligence, its claim is barred by operation of the economic loss doctrine.

Plaintiffs do not plead any individual or personal harm suffered by Mr. Berkens.  The allegations concern only collective harm to plaintiffs' commercial reputation.  Dkt. No. 25 ¶¶ 24, 35, 41, 66, 71, 81.  Twitter contends that permitting plaintiffs to amend to allege harm to Mr. Berkens's personal reputation would be futile, because nothing on the face of the Twitter account connects Mr. Berkens to the account, and none of the Doe defendants' tweets mentioned his name.

### 3. Duplicative of contract claim

Twitter also argues that plaintiffs' negligence claim is an impermissible restatement of its breach of contract claim. Dkt. No. 31 at 12. "A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations. Instead, courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal. App. 4th 848, 853 (2004). Here, the FAC recites virtually identical allegations in support of both the contract and negligence claims:

- Breach of Contract:

    - Paragraph 64: "Twitter otherwise had an implied obligation to *maintain adequate security protocols*, detect blatant account hacks, and *promptly and reasonably investigate and respond to security complaints* about hacked accounts."

    - Paragraph 65: "Twitter has breached the Terms of Service and its implied obligations by *recklessly and grossly negligently failing to allow Plaintiffs continued access and control of their owned content*, by allowing an unauthorized third party to access and control such content and the entire Account, . . . and *by failing to promptly and reasonably investigate and respond to the many complaints* from Plaintiffs and Plaintiffs' reader about the hacked Account."

    - Paragraph 67: "Plaintiffs are entitled under California law to recover from Twitter all actual damages incurred by Plaintiffs as a result of Twitter's *grossly negligent and reckless breach*."

- Negligence and Recklessness

    - Paragraph 69: "Twitter has a duty to *maintain the confidentiality and security of Plaintiffs' confidential and proprietary content and communications . . . , to provide continuous service to Plaintiffs . . .*, and *to adopt and follow reasonable and industry-standard (at minimum) security measures* to ensure the reliability and integrity of Twitter's services and protect its clients . . . ."

    - Paragraph 70: "In breach of these duties, Twitter was negligent, grossly negligent, and/or reckless in *providing an unauthorized third party with access to Plaintiffs' Account, failing to implement adequate security measures and perhaps even Twitter's own meager security measures, and failing to promptly and reasonabl[y] investigate and remedy the theft of Plaintiffs' account*."

Plaintiffs do not address this argument. The Court agrees with Twitter that plaintiffs' contract

claim may not also be pled as a separate tort claim.

The Court dismisses plaintiffs' claims for negligence and gross negligence with leave to amend to the extent plaintiffs can plausibly allege a duty owed by Twitter that does not arise from a contractual obligation, and to the extent plaintiffs can plead harm that is not solely economic loss.

### D.    Claim 8: Breach of Duty of Bailment

Bailment is "the deposit of personal property with another, usually for a particular purpose." *United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n.11 (9th Cir. 296); *see also Whitecombe v. Stevedoring Servs. of Am.*, 2 F.3d 213, 316 (9th Cir. 1993) ("California law generally defines a bailment as the delivery of a thing in trust for a purpose upon an implied or express contract.") (internal citation omitted); *Earhart v. Callan*, 221 F.2d 160, 163 (9th Cir. 1955) (defining bailment as "the relationship arising when personal property is delivered to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled or to otherwise deal with the goods according to the bailor's directions").

Plaintiffs contend that their bailed property consists of (1) plaintiffs' credit card information and (2) proprietary information related to the pricing and sale of domain names contained in the account's direct messages. Dkt. No. 32 at 19. Plaintiffs claim that they entrusted their property to Twitter, Twitter had a duty to use ordinary care to safeguard their property as the custodian and bailee, and Twitter breached that duty by allowing the Doe defendants to take over and control plaintiffs' account. Dkt. No. 25 ¶¶ 77-79.

With respect to plaintiffs' claim for bailment as to their credit card information, the Court finds *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 942 (S.D. Cal. 2012) instructive. In that case, the plaintiffs alleged that Sony failed to follow basic industry-standard protocols to safeguard its customers' personal and financial information, thus permitting a criminal intrusion into Sony's PlayStation Network computer system. *Id.* at 950. In addition to negligence, the plaintiffs asserted a claim for bailment of their personal information, including their credit card information, which was stolen as the result of a hack into Sony's network. *Id.* at

United States District Court
Northern District of California

17

950–51, 974–75.  In *Sony*, the Southern District of California dismissed the bailment claim with prejudice because it was "hard pressed to conceive of how Plaintiffs' Personal Information could be construed to be personal property so that Plaintiffs somehow 'delivered' this property to Sony and then expected it to be returned."  *Id.* at 974.  Moreover, the court found the bailment claim to be duplicative of the plaintiffs' negligence and California law claims (including unfair competition).  *Id.* at 974–75.  This analysis aptly describes plaintiffs' bailment claim here.  Twitter did not take custody of plaintiffs' credit card information, nor was it subject to return to plaintiffs at some later time.  Plaintiffs' credit card information was indeed shared with Twitter, but that sharing does not fit the "bailment" mold.

As for plaintiffs' claim for bailment of their direct messages, plaintiffs provide no authority for the proposition that their intangible direct messages are personal property subject to bailment.  To the extent plaintiffs argue that the alleged duty of bailment arises from the TOS provision stating that "[y]ou retain your rights to any Content you submit, post or display on or through the Services.  What's yours is yours—you own your Content (and your incorporated audio, photos and videos are considered part of the Content)," this provision does not support plaintiffs' bailment theory.  Dkt. No. 31-2 at 11.  As explained above, this TOS provision concerns Twitter's disavowal of any ownership interest in its subscribers' content.  As with their credit card information, plaintiffs offer no persuasive explanation for how they delivered these direct messages to Twitter, and it does not constitute a binding promise by Twitter to provide uninterrupted access to the direct messages in Twitter's custody, with the expectation of a later return.  Plaintiffs merely transmitted direct messages to others using Twitter's service.

Plaintiffs have failed to plead facts identifying any personal property that has been delivered in trust to Twitter.  Moreover, plaintiffs' reliance on the TOS and on implied duties and obligations allegedly owed by Twitter strongly suggests that their bailment claim is entirely duplicative of their breach of contract and negligence claims, a point plaintiffs effectively conceded at the hearing.  Dkt. No. 37 at 26:9-22.  Accordingly, the Court dismisses plaintiffs' bailment claim without leave to amend.

### E.    Claim 10: Unfair Competition

The "unlawful" prong of California's unfair competition statute "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, No. 16-cv-02560-SI, 2016 WL 5815311, at *4 (N.D. Cal. Oct. 5, 2016) (internal quotations omitted). Thus, where a plaintiff "has not pled sufficient facts to survive a motion to dismiss with respect to its [underlying claim], it has not pled sufficient facts to meet the unlawful prong of its [unfair competition claim]." *Id.* at *5.

The FAC asserts that Twitter violated California Business and Professions Code § 17200 et seq. because its conduct was unlawful and unfair. Dkt. No. 25 ¶ 87. This claim is entirely derivative of plaintiffs' other claims. Dkt. No. 37 at 29:3-11. Twitter argues that plaintiffs fail to state an unfair competition claim because plaintiffs have not pled an "unlawful" act or an "unfair" practice. Dkt. No. 31 at 15–17.

In their opposition, plaintiffs primarily rely on their contributory trademark infringement claim to support their unfair competition claim. Dkt. No. 32 at 21. However, because the Court dismisses plaintiffs' contributory infringement claim above, the Court similarly dismisses plaintiffs' unfair competition claim.

With respect to the "unfair" practice, the FAC conclusorily asserts that Twitter's actions unfairly "provided business advantage to third parties (Doe Defendants and Plaintiffs' competitors) at the expense of Plaintiffs' rights to access and use the Account, and to not have its credit card charged for unauthorized Promoted Tweets." Dkt. No. 25 ¶ 87. The FAC contains no facts to support the idea that plaintiffs' loss of access to their Twitter account for a week spanning the Christmas holiday or a credit card charge of $500 (*see* Dkt. No. 37 at 30:18–32:3) provided a business advantage to the Doe defendants or plaintiffs' competitors.

The Court thus dismisses plaintiffs' unfair competition claim with leave to amend to plead facts supporting a claim that Twitter's conduct was unlawful or unfair under California's unfair competition statute.

### F.    Claim 1:  Declaratory Judgment

Plaintiffs assert a claim for declaratory judgment under 28 U.S.C. § 2201 for a declaration "1) that Plaintiffs' Blog, Domain Name, Mark and corresponding Account are valid, subsisting and owned exclusive by Plaintiffs, and 2) that Plaintiffs have suffered harm in an amount to be proved at trial."  Dkt. No. 25 ¶ 39.

As plaintiffs conceded at the hearing, "declaratory relief is not an independent cause of action"—only a remedy.  *VIA Techs., Inc. v. SONICBlue Claims LLC*, No. C 09-2109 PJH, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010); *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court.  It only permits the district court to adopt a specific remedy when jurisdiction exists."); *Spangler v. Selene Fin. LP*, No. 16-cv-05103-WHO, 2016 WL 5681311, at *7 (N.D. Cal. Oct. 3, 2016) (dismissing claim for declaratory judgment because declaratory relief is not an independent cause of action and plaintiff's complaint otherwise failed to state a claim under which any relief could be granted).

Accordingly, the Court dismisses this claim without leave to amend.

## IV.    CONCLUSION

For the reasons discussed above, it is ORDERED that:

1) Plaintiffs' contributory trademark infringement claim is dismissed with leave to amend to add specific facts showing that Twitter possessed constructive knowledge that the Doe defendants infringed plaintiffs' common law trademark rights, but any such contributory trademark infringement claim based on Twitter's actual knowledge of infringement, aiding and abetting infringement, or willful blindness to infringement is dismissed without leave to amend;

2) Plaintiffs' breach of contract claim is dismissed, with leave to amend to plead (a) specific provisions in the TOS that Twitter has breached, and/or (b) to plead specific facts giving rise to implied obligations that Twitter has breached. Plaintiffs' claim concerning the breach of the covenant of good faith and fair dealing is dismissed without leave to amend.  Plaintiffs must seek leave of Court to

add a claim for void contract, absent consent by Twitter to such amendment;

3) Plaintiffs' negligence/gross negligence claim is dismissed with leave to amend to the extent plaintiffs can plausibly allege a duty owed by Twitter that does not arise from a contractual obligation, and to the extent plaintiffs can plead harm that is not solely economic loss;

4) Plaintiffs' claim for breach of duty of bailment is dismissed without leave to amend;

5) Plaintiffs' unfair competition claim is dismissed with leave to amend to plead facts supporting a claim that Twitter's conduct was unlawful or unfair; and

6) Plaintiffs' claim for declaratory judgment is dismissed without leave to amend.

Plaintiffs must file an amended complaint or a motion seeking leave to file an amended complaint by **November 7, 2018**.

**IT IS SO ORDERED.**

Dated: October 24, 2018

_Virginia K. DeMarchi_
VIRGINIA K. DEMARCHI
United States Magistrate Judge